Loy **CARTER, Geoff Burkhart, Heather Young, and Deborah Robinson, on behalf of themselves and all others similarly situated, Plaintiffs,**

v.

**COUNTRYWIDE CREDIT INDUSTRIES, INC., Countrywide Home Loans, Inc., and Full Spectrum Lending, Inc., Defendants.**

**No. CIV.A. 301CV1182M.**

United States District Court, N.D. Texas, Dallas Division.

March 6, 2002.

David L. Leon, Lawrence S. Homer, Leon & Homer, Dallas, TX, Karen K. Fitzgerald, Kleiman, Lawrence, Baskind & Fitzgerald, Dallas, TX, Ann E. Hinds, Caryl L. Bois, Sigrid, McCawley, Noies, Schiller & Flexner, Hollywood, FL, for Plaintiffs.

Ruth Ann Norton Danield, Bryan D. Perkins, Connie K. Wilhite, Gibson, McClure, Wallace & Daniels, Dallas, TX, for Defendants.

### MEMORANDUM ORDER AND OPINION

LYNN, District Judge.

On November 13, 2001, Defendants filed a Motion to Compel Arbitration and to Dismiss or Stay Proceedings. After having considered the Motion, as well as the Response and Reply thereto, the parties' arguments as presented at the Court's January 28, 2002 hearing on the issue, and the supplemental briefing requested by the Court, the Court is of the opinion that the Motion should be GRANTED, for the reasons stated below.

## I. Background

Plaintiffs, past employees of Defendants, Countrywide Credit Industries and two of its subsidiaries, Countrywide Home Loans and Full Spectrum Lending, brought this action on behalf of themselves and all others similarly situated in an attempt to recover overtime compensation allegedly due under the provisions of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, from Defendants. On November 13, 2001, Defendants moved to compel Plaintiffs to submit the FLSA claims to arbitration in conformance with certain arbitration agreements allegedly entered into between the named Plaintiffs and the Defendants as a condition of Plaintiffs' employment with Defendants.

■ Defendants request the Court to enforce the arbitration agreements by requiring the Plaintiffs to submit their FLSA claims to binding arbitration. Defendants have submitted copies of documents entitled "Mutual Agreement to Arbitrate Claims with Defendants" that were signed by all of the named Plaintiffs and all of the opt-in Plaintiffs, except for one

individual, Lisa Barnett. The agreements, phrased identically, provide that "claims for wages or other compensation due" shall be submitted to arbitration. Defendants argue that the Federal Arbitration Act (FAA) mandates that the Court regard these arbitration agreements as "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

## II. Are FLSA Claims Subject to Arbitration?

### A. *Barrentine*

In response to Defendants' Motion, Plaintiffs argue that case law requires that Plaintiffs be allowed a judicial forum for litigation of rights arising under the FLSA, and that this requirement cannot be waived by agreement of the parties to submit the claim to arbitration. For this proposition, Plaintiffs rely primarily upon the arbitration analysis within *Barrentine v. Arkansas–Best Freight System, Inc.,* 450 U.S. 728, 101 S.Ct. 1437, 67 L.Ed.2d 641 (1981), a case in which the Supreme Court was called on to decide "whether an employee may bring an action in federal district court[ ] alleging a violation of the minimum wage provisions of the [FLSA] after having unsuccessfully submitted a wage claim based on the same underlying facts to a joint grievance committee pursuant to the provisions of his union's collective-bargaining agreement [CBA]." *Id.* at 729, 101 S.Ct. 1437. The Court ultimately held that an employee did not waive his right to bring an FLSA claim because he had previously submitted a grievance based on breach of the CBA to labor arbitration pursuant to the procedures outlined in the CBA. *Id.* at 745, 101 S.Ct. 1437. The Court came to this conclusion based on three principle premises: (a) that FLSA rights are nonwaivable; (b) that an arbitration clause in a CBA should not be given a high level of deference because the

CBA was negotiated by a labor union and because the grievance will be processed by the union, thereby leaving open the possibility that the union will sacrifice the individual worker's rights for the good of the collective body; and (c) that labor arbitration cannot provide a satisfactory resolution to FLSA claims. With respect to the nonwaivable nature of FLSA claims, the Court explained that

[t]his Court's decisions interpreting the FLSA have frequently emphasized the nonwaivable nature of an individual employee's right to a minimum wage and to overtime pay under the Act. Thus, we have held that FLSA rights cannot be abridged by contract or otherwise waived because this would "nullify the purposes" of the statute and thwart the legislative policies it was designed to effectuate.

*Id.* at 740, 101 S.Ct. 1437. In reference to the regard courts should give to arbitration clauses within CBAs, the Court stated,

[t]here are two reasons why an employee's right to a minimum wage and overtime pay under the FLSA might be lost if submission of his wage claim to arbitration precluded him from later bringing an FLSA suit in federal court. First, even if the employee's claim were meritorious, his union might, without breaching its duty of fair representation, reasonably and in good faith decide not to support the claim vigorously in arbitration. Wage and hour disputes that are subject to arbitration under a collective-bargaining agreement are invariably processed by unions rather than by individual employees. Since a union's objective is to maximize overall compensation of its members, not to ensure that each employee receives the best compensation deal available, a union balancing individual and collective interests might

validly permit some employees' statutorily granted wage and hour benefits to be sacrificed if an alternative expenditure of resources would result in increased benefits for workers in the bargaining unit as a whole.

*Id.* at 742, 101 S.Ct. 1437 (citations omitted).

The Court's decision also focused on the limited authority of labor arbitrators to resolve disputes, their lack of knowledge of the law, and their inability to grant a wide range of relief. The Court first noted that "a substantial proportion of labor arbitrators are not lawyers ... and this is particularly true with respect to most members of joint grievance committees, who are drawn from the ranks of the management and union leadership;" labor arbitrators' competence lies in "the law of the shop, not the law of the land." *Id.* at 743 & n. 21, 101 S.Ct. 1437. Furthermore, "even though a particular arbitrator may be competent to interpret and apply statutory law, he may not have the contractual authority to do so." *Id.* at 744, 101 S.Ct. 1437. The Court continued, "[a]n arbitrator's power is both derived from, and limited by, the collective-bargaining agreement..... His task is limited to construing the meaning of the [CBA] so as to effectuate the collective intent of the parties." *Id.* Moreover, "arbitrators very often are powerless to grant the aggrieved employees as broad a range of relief [as courts]." *Id.* at 745, 101 S.Ct. 1437. The FLSA allows courts to award actual and liquidated damages, reasonable attorney's fees, and costs. "An arbitrator, by contrast, can award only that compensation authorized by the wage provision of the [CBA]." *Id.* Thus, the Court concluded:

> In sum, the FLSA rights petitioners seek to assert in this action are independent of the collective-bargaining process. They devolve on petitioners as individual workers, not as members of a collective

organization. They are not waivable. Because Congress intended to give individual employees the right to bring their minimum-wage claims under the FLSA in court, and because these congressionally granted FLSA rights are best protected in a judicial rather than an arbitral forum, we hold that petitioners' claim is not barred by the prior submission of their grievances to the contractual dispute-resolution procedures.

*Id.* at 745, 101 S.Ct. 1437.

Plaintiffs rely on the arbitration analysis within *Barrentine* for the proposition that FLSA claims may not be submitted to arbitration pursuant to an arbitration agreement entered into by an employee and his employer. Plaintiffs' invocation of *Barrentine* for this purpose, however, is inapposite. In examining *Barrentine,* it becomes clear that the Court in that case is only addressing labor arbitration-a different animal from commercial arbitration. Labor arbitration takes place when a provision of a collective-bargaining agreement (CBA) is violated. The labor arbitrator, often not one skilled in the law, has power to resolve an employee's complaint that an employer has failed to perform a contractual provision within the CBA. The labor arbitration proceeding focuses solely on the contractual rights of the employee under the CBA, not on any statutorily created rights granted to the employee. Thus, although a circumstance such as nonpayment of overtime wages may give rise to a violation both of the CBA (because the CBA might contain a provision requiring the employer to pay all overtime wages due) and a violation of the FLSA, only the contractual claim can be resolved in the labor arbitration provided for in the CBA. If the Court had held in *Barrentine* that an employee's agreement to labor arbitration under the CBA for a contractual violation waived the employee's right to also pursue the statutory violation, it would

have eliminated the employee's ability to use the statute at all.[1] A fair reading of the actual analysis of *Barrentine* is that labor arbitration under a CBA does not preclude the employee's subsequent assertion of her statutory FLSA rights. Its holding is not applicable in the context of submission of an employee's FLSA claims to *commercial* arbitration pursuant to a contract executed between the individual employee (as opposed to the union) and the employer.

## B. *Gilmer*

Still, this Court is cognizant that some of the anti-arbitration rhetoric found in *Barrentine* could plausibly be applied not only to labor arbitration, but also to commercial arbitration. Understanding this, the Supreme Court, in *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991), embraced commercial arbitration as a means of resolving statutory claims and explicitly disproved of some statements made in earlier opinions such as *Barrentine* that expressed hostility to arbitration, at least in the context presented. In *Gilmer*, the Court held that the FAA requires courts to send claims arising under the Age Discrimination in Employment Act (ADEA) to commercial arbitration when the employee had executed an arbitration agreement covering such claims. *Id.* at 23, 111 S.Ct. 1647. In reaching its conclusion, the Supreme Court first explained the purpose of the FAA and the extreme deference courts should give to agreements falling within the purview of the Act:

The FAA was originally enacted in 1925 ... and then reenacted and codified in 1947 .... Its purpose was to reverse the longstanding judicial hostility to arbitration agreements that had existed at English common law and had been adopted by American courts, and to place arbitration agreements upon the same footing as other contracts.... The FAA ... provides for stays of proceedings in federal district courts when an issue in the proceeding is referable to arbitration ... and for orders compelling arbitration when one party has failed, neglected, or refused to comply with an arbitration agreement .... These provisions manifest a "liberal federal policy favoring arbitration agreements."

It is by now clear that statutory claims may be the subject of an arbitration agreement, enforceable pursuant to the FAA. Indeed, in recent years we have held enforceable arbitration agreements relating to claims arising under the Sherman Act; § 10(b) of the Securities Exchange Act of 1934; the civil provisions of the Racketeer Influenced and Corrupt Organizations Act (RICO); and § 12(2) of the Securities Act of 1933. In these cases, we recognized that "[b]y agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum."

1. When the *Barrentine* Court talks about an employee "waiving" his FLSA rights, it is not implicating the situation in which an employee agrees to have his FLSA claim processed in an arbitral, rather than a judicial, forum; rather, the Court means that an employee and employer cannot contract around the FLSA to establish a lower minimum wage than is provided for in the statute, or to deny to an employee the right to overtime when such a right is provided by the statute. The Court's discussion of the nonwaivability of FLSA rights focuses on the inability of an employee to waive the substantive rights granted him under the FLSA, not the employee's agreement to bring an FLSA claim in a commercial arbitral forum in lieu of a judicial one. *See id.* at 741 n. 18 (giving as an example of an employee attempting to waive his FLSA rights "an agreement to pay less than the minimum wage requirements").

*Id.* at 26, 111 S.Ct. 1647 (citations omitted). The Court continued by explaining the test a court must apply in determining whether a statutory claim is subject to arbitration under an arbitration agreement falling under the FAA. *Id.* It stated, "[a]lthough all statutory claims may not be appropriate for arbitration, '[h]aving made the bargain to arbitrate, the party should be held to it unless Congress itself has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue.'" *Id.* The Court noted that the burden is on the party resisting arbitration to "show that Congress intended to preclude a waiver of a judicial forum" for claims arising under the statute at issue. *Id.* Such an intention may be found in the text of the statute, its legislative history, or in an "inherent conflict" between arbitration and the statute's underlying purposes. *Id.* The Court emphasized that "[t]hroughout such an inquiry, it should be kept in mind that 'questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration.'" *Id.*

As stated above, the Court ultimately found that ADEA claims could be submitted to arbitration. It came to this determination despite several arguments lodged by Gilmer against arbitral resolution of ADEA claims. First, the plaintiff contended that the ADEA's public purpose could not be carried out in the private forum of arbitration. *Id.* Addressing this contention, the Court responded, "[b]oth of these dispute resolution mechanisms [arbitration and the judicial process] can further broader social purposes. The Sherman Act, the Securities Exchange Act of 1934, RICO, and the Securities Act of 1933 all are designed to advance important public policies, but ... claims under those statutes are appropriate for arbitration." *Id.*

Gilmer also argued that arbitration procedures would inadequately resolve the claim. *Id.* at 30, 111 S.Ct. 1647. In rejecting this contention, the Court reasoned that the plaintiff's "generalized attacks on arbitration 'res[t] on suspicion of arbitration as a method of weakening the protections afforded in the substantive law to would-be complainants,' and as such, they are 'far out of step with our current strong endorsement of the federal statutes favoring this method of resolving disputes.'" *Id.* In particular, the plaintiff attacked the neutrality of arbitration panels, insisting that they would be biased in favor of the employer. *Id.* The Court struck down this challenge by "'declin[ing] to indulge the presumption that the parties and arbitral body conducting a proceeding will be unable or unwilling to retain competent, conscientious and impartial arbitrators.'" *Id.* Furthermore, "[t]he FAA ... protects against bias[ ] by providing that courts may overturn arbitration decisions '[w]here there was evident partiality or corruption in the arbitrators.'" *Id.* (citing 9 U.S.C. § 10(b)).

Gilmer additionally attacked the limited discovery procedures in arbitration, and the inability of complainants to bring class actions in such fora. *Id.* at 31, 111 S.Ct. 1647. The Court summarily rejected these contentions as well, first explaining that, although arbitration procedures "might not be as extensive as in the federal courts, by agreeing to arbitrate, the party 'trades the procedures and opportunity for review of the courtroom for the simplicity, informality, and expedition of arbitration.'" *Id.* In reference to the inability to bring class actions in arbitration, the Court noted that "the fact that the [ADEA] provides for the possibility of bringing a collective action does not mean that individual attempts at conciliation were intended to be barred." *Id.* at 32, 111 S.Ct. 1647. Furthermore, the Court found important in this regard that "arbitration agreements will not preclude the EEOC from bringing actions seeking class-wide and equitable relief." *Id.*

Last, Gilmer insisted that the arbitration agreement should not be enforced because of "unequal bargaining power between employers and employees," which might result in employers taking advantage of their future employees by forcing them to sign the agreements as a condition of employment. *Id.* at 33, 111 S.Ct. 1647. The Court dismissed that argument by stating, "[m]ere inequality in bargaining power ... is not a sufficient reason to hold that arbitration agreements are never enforceable in the employment context.... [The] claim of unequal bargaining power is best left for resolution in specific cases" in which plaintiffs present evidence of fraud or "overwhelming economic power that would provide grounds 'for the revocation of any contract.'" *Id.*

The Court explicitly distinguished *Gilmer* and other such decisions applying the FAA from its earlier cases involving arbitration clauses found in CBAs, including *Alexander v. Gardner–Denver Co.,* 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974) and *Barrentine,* explaining:

> There are several important distinctions between the *Gardner–Denver* line of cases and the case before us. First, those cases did not involve the issue of the enforceability of an agreement to arbitrate statutory claims. Rather, they involved the quite different issue [of] whether arbitration of contract-based claims precluded subsequent judicial resolution of statutory claims. Since the employees there had not agreed to arbitrate their statutory claims [but only their contractual claims], and the labor arbitrators were not authorized to resolve [statutory] claims, the arbitration in those cases understandably was held not to preclude subsequent statutory actions. Second, because the arbitration in those cases occurred in the context of a collective-bargaining agreement, the claimants there were represented by their unions in the arbitration proceed-
> ings. An important concern therefore was the tension between collective representation and individual statutory rights, a concern not applicable in the present case. Finally, those cases were not decided under the FAA, which, as discussed above, reflects a "liberal policy favoring arbitration agreements." Therefore, those cases provide no basis for refusing to enforce Gilmer's agreement to arbitrate his ADEA claim.

500 U.S. at 35, 111 S.Ct. 1647. Perhaps most important for purposes of deciding the case at hand, the Court also explained that it had experienced a change in its perception of the merits of arbitration since *Gardner–Denver* and *Barrentine:* "The Court in *Gardner–Denver* ... expressed the view that arbitration was inferior to the judicial process for resolving statutory claims. That 'mistrust of the arbitral process,' however, has been undermined by our recent arbitration decisions." *Id.* at 34 n. 5, 111 S.Ct. 1647. It emphasized, "we are well past the time when judicial suspicion of the desirability of arbitration and of the competence of arbitral tribunals inhibited the development of arbitration as an alternative means of dispute resolution." *Id.* (internal quotation marks omitted).

It thus becomes clear that *Gilmer* was intended to express approval, rather than disfavor, for the resolution of statutory claims by arbitration, where the parties had so agreed. However, Plaintiffs argue that *Gilmer* expressly limited its holding to ADEA claims by grounding its decision on the Court's finding that the ADEA has a "flexible approach" to dispute resolution, as the ADEA allows the EEOC to pursue informal resolution methods and requires that administrative remedies be exhausted before an employee harmed by the ADEA can bring her claims in court. However, Plaintiffs' contention is unpersuasive. That the ADEA has a flexible approach to

dispute resolution was but a factor in the Court's decision, and was by no means the decisive point in favor of the Court's holding. *Id.* at 29, 111 S.Ct. 1647. In fact, the Court noted the flexibility of the ADEA merely to demonstrate that, contrary to the plaintiff's assertion that the text of the ADEA precluded informal dispute resolution methods, it actually approved of them. Ultimately, the Court's holding was grounded in the fact that "Congress ... did not explicitly preclude arbitration or other nonjudicial resolution of claims" in either the text, legislative history, or purpose of the ADEA. *Id.*

Similarly, the FLSA contains no such preclusion in its text, legislative history, or purpose. Although Plaintiffs argue that the text of the FLSA contains an implied restriction on arbitration, they are incorrect. The jurisdictional provision within the FLSA permits claims to be brought "in any Federal or State court of competent jurisdiction." 29 U.S.C. § 216. Plaintiffs argue that since the wording of this provision is different from that within the ADEA, which allows claims to be brought in "any court of competent jurisdiction," the FLSA's more specific jurisdictional provision was intended to discourage use of alternative dispute mechanisms, while the ADEA's was intended to encourage it. 29 U.S.C. § 626(c)(1). In further support of this argument, Plaintiffs explain that the text of the FLSA was amended in 1974 to change the jurisdictional provision from allowing claims to be brought in "any court of competent jurisdiction" to "any Federal or State court of competent jurisdiction." Therefore, Plaintiffs argue that the amendment was Congress's way of restricting FLSA claims from being resolved in alternative fora.

The legislative history does not explain the reason behind Congress's 1974 amendment of the FLSA's jurisdictional language. However, a review of the Supreme Court cases closely predating the amendment reveals the likely purpose behind it. In 1973, the Supreme Court issued *Employees of the Department of Public Health and Welfare v. Department of Public Health and Welfare,* 411 U.S. 279, 93 S.Ct. 1614, 36 L.Ed.2d 251 (1973), which held that a group of Missouri state employees could not sue their employer, the state of Missouri, in federal court under the FLSA due to the state's sovereign immunity under the Eleventh Amendment. In reaching this decision, the Court questioned whether the Missouri state employees, if prevented from bringing their FLSA claims in federal court, could still sue the state agency in state court. The Court commented that the jurisdictional proviso that FLSA suits could be brought in "any court of competent jurisdiction" did not clearly allow FLSA suits in state court:

> [Plaintiffs'] argument is that if we deny this direct federal court remedy, we in effect are recognizing that there is a right without any remedy. [The jurisdictional provision of the FLSA] authorizes employee suits in "any court of competent jurisdiction." *Arguably, that permits suit in the Missouri [state] courts[,] but that is a question we need not reach.* We are concerned only with the problem of this Act and the constitutional constraints on "the judicial power" of the United States.

*Id.* at 287, 93 S.Ct. 1614. One year later, Congress amended the jurisdictional provision to clarify that FLSA suits could be brought in both state and federal courts. Thus, the purpose of the amendment was almost certainly to answer the question implicitly posed by the Court in 1973 as to whether FLSA claims could be brought in state court, rather than to prevent resolution of FLSA claims in an arbitral forum.

In conclusion, in this Court's view *Gilmer* eviscerates the argument that *Barrentine* requires the Court to find that FLSA claims must be brought in court rather than in arbitration. *Gilmer* sufficiently distinguishes itself from *Gardner–Denver* and *Barrentine* such that *Gardner–Denver* and *Barrentine*, which focus solely on arbitration clauses in CBAs, are inapplicable in suits involving arbitration agreements falling under the FAA. In fact, the two lines of cases are actually consistent in that they lead to the same result: ensuring that the employee is able to enforce her substantive statutory rights. To the extent that one reads the two cases as conflicting in their respective stances toward arbitration, *Gilmer*, as the more recent case, is the one from which courts confronting the issue of arbitrability of an employee's claims should take their cues.

## C. The Ninth Circuit: *Kuehner*

The only circuit to have specifically analyzed the question of whether to send an employee's FLSA claims to arbitration is the Ninth Circuit, which did so in *Kuehner v. Dickinson & Co.*, 84 F.3d 316 (9th Cir. 1996). The *Kuehner* court held that FLSA claims may be decided in an arbitral forum.[2] The plaintiff had appealed the

---

**2.** Plaintiffs assert that other circuit courts have also addressed the issue and have resolved it contrary to the Ninth Circuit, but the cases Plaintiffs cite in support of this contention do not speak to the precise issue confronted by both the *Kuehner* court and this Court. *See Tran v. Tran*, 54 F.3d 115, 118 (2d Cir.1995) (cited by Plaintiffs, but holding only that an employee was not required to submit his contractual grievances to labor arbitration under the terms of the CBA before filing suit for FLSA violations); and *Brooks v. Village of Ridgefield Park*, 185 F.3d 130 (3d Cir.1999) (cited by Plaintiffs, but determining only whether the village's collectively bargained overtime payment schedule conflicted with the FLSA's prompt payment requirement).

Plaintiffs also cite to the following district court cases in support of their position, but the cases do not support the broad position Plaintiffs advocate. *See Abendschein v. Montgomery County*, 984 F.Supp. 356 (D.Md.1997) (Plaintiffs contend that this case states that Fourth Circuit policy favoring arbitration "does not apply to the FLSA"; however, this statement occurs in the context of the district court's discussion of labor arbitration under CBAs); *Schwertfeger v. Village of Sauk Village*, No. ——, 2001 WL 293115 (N.D.Ill. Mar.23, 2001) (although Plaintiffs maintain that this opinion states that *Barrentine* protects the employee's congressionally-granted right to seek redress through the FLSA in court, the case holds only that police officers did not waive their rights to certain compensable time under the FLSA by negotiating otherwise in the CBA).

Plaintiffs' position is supported by *Louis v. Geneva Enterprises, Inc.*, 128 F.Supp.2d 912 (E.D.Va.2000). That court denied the defendant's motion to stay the case pending arbitration, although both the employer and employee had executed a valid arbitration agreement. The opinion relies on *Barrentine* and *Tran v. Tran*, 54 F.3d 115 (2d Cir.1995), but inexplicably omits mention of *Gilmer*. In this Court's view, the *Louis* court's opinion overestimates the applicability of *Barrentine* and *Tran*. It states that under "*Barrentine* and *Tran* a plaintiff bringing an FLSA claim has a right to have [his] claim heard in court before [or after] he exhausts his arbitration remedy pursuant to a signed agreement." *Id.* at 916. However, neither *Barrentine* nor *Tran* should be construed that broadly. Both are cases involving CBAs, not the FAA.

A final case cited by Plaintiffs in support of their position, *Bailey v. Ameriquest Mortgage Co.*, No. 2002 WL 100391 (D.Minn. Jan.23, 2002), also supports Plaintiffs' argument insofar as that court concluded that the inability to proceed as a class was a factor weighing in favor of non-enforcement of the arbitration agreement in question. However, the court ultimately rested its decision denying the defendant's motion to dismiss on the fact that the arbitration agreement in question was a conglomeration of inequitable provisions, the totality of which rendered the agreement unenforceable. *See id.* at *7. For instance, the arbitration agreement contained a one-year limitations period (whereas the FLSA provides for two- or three-year limitations periods), a fee splitting provision that required the employee to shoulder half of the costs of the arbitration, a requirement that the venue for claims be in California (even if the em-

district court's decision to stay proceedings pending the arbitration of the plaintiff's FLSA claims pursuant to an agreement entered into by the plaintiff and her employer. *Id.* at 318. The Ninth Circuit upheld the district court's decision. *Id.* at 319. Following the reasoning in *Gilmer,* the *Kuehner* court found that the FAA "reversed the judicial hostility to the enforcement of arbitration contracts, [and] also created a rule of contract construction favoring arbitration." *Id.* Thus, the court placed the burden on Kuehner to provide a reason why the court should not enforce the arbitration agreement. The plaintiff presented an argument for nonenforcement identical to the one presented by the Plaintiffs in the case at hand: "Unable to identify support in the text or legislative history of the FLSA, [Kuehner] cite[d] dicta in *Barrentine* ... that questions the competence of arbitrators to decide FLSA claims." *Id.* at 319–20. In response to Kuehner's invocation of *Barrentine,* the Ninth Circuit stated:

> Kuehner's reliance on *Barrentine* is unpersuasive [given that] the Supreme Court wrote in *Gilmer* that its previous expressions of "mistrust of the arbitral process" had been "undermined" by subsequent cases, and that *Barrentine* provides "no basis" for the refusal to enforce an arbitration contract because it was "not decided under the FAA."

*Id.* at 320. The Ninth Circuit thus held that Kuehner's FLSA claim was subject to arbitration. *Id.*

### D. The Fifth Circuit: *Bernard & Williams*

Although Plaintiffs argue that two Fifth Circuit cases, *Bernard v. IBP, Inc. of Nebraska,* 154 F.3d 259 (5th Cir.1998) and *Williams v. Cigna Financial Advisors Inc.,* 197 F.3d 752 (5th Cir.1999), dictate that FLSA claims are ineligible for arbitration, Plaintiffs are incorrect. In *Bernard,* the court considered whether the plaintiffs' FLSA claim was precluded by the employees' CBA-the same issue as that presented in *Barrentine.* Unsurprisingly, the Fifth Circuit held, in line with clear Supreme Court precedent, that the presence of an arbitration clause in the CBA did not preclude the plaintiffs from bringing a separate FLSA claim. Plaintiffs characterize *Bernard* as follows: "In *Bernard, IBP* argued, precisely as Defendants do here, that the district court should have dismissed plaintiffs' FLSA claims because the parties entered into an arbitration agreement. [The Fifth Circuit] rejected *IBP*'s argument." Response at 7–8. But, in fact, the *Bernard* court itself stated that IBP argued only "that the district court should have dismissed this case *because the plaintiffs' FLSA suit was preempted by their CBA."* *Bernard,* 154 F.3d at 262 (emphasis added). Holding, as did the Court in *Barrentine,* that the CBA did not

---

ployee worked for the defendant company outside of California and the cause of action accrued outside of that state), and a prohibition against proceeding collectively. *Id.* at \*3–\*7. After reviewing such terms, the court found that "when all the procedural hurdles contained in the Agreement are considered together ... the likely result is obvious: the cost of bringing the claim will quickly outweigh any potential recovery under the Act." *Id.* at \*7. In the case at hand, however, this Court has before it arbitration agreements of a different type, with venue and limitations

provisions that are not inequitable. Although the agreements contain a fee splitting provision that requires Plaintiffs to pay what could amount to almost half of the arbitration costs, the Court finds that, if that provision is severed out pursuant to the severability clause, so that Defendants are required to pay all costs associated with the arbitration, the provisions in the arbitration agreement do not unduly discourage Plaintiffs from bringing their claims in an arbitral setting. *See infra* at 620–21 (discussing the agreements' fee-splitting provision and severance clause).

preempt the statutory claim, the Court concluded that the district court was correct in refusing to dismiss the case. *Id.*

The only statement in *Bernard* that might reasonably be interpreted as supporting Plaintiffs' position is in the *Bernard* court's summary of *Barrentine*, in which the court explained, "[t]he [Supreme] Court ... acknowledged that arbitration of FLSA claims is inadequate because the FLSA provides for liquidated damages, attorneys' fees, and costs. In general, arbitrators do not have authority to award these special damages." *Id.* at 263. In this statement, the Fifth Circuit summarized the Supreme Court's reasoning in *Barrentine;* at no point did the Fifth Circuit make the blanket statement that FLSA claims are not subject to arbitration. Moreover, it must be remembered that *Barrentine*'s statement about the limitation of arbitrators in awarding damages was directed solely to labor arbitrators, not commercial arbitrators.[3] Thus, *Bernard* is not a directive to courts to decline to refer FLSA claims to commercial arbitration.

Similarly, although Plaintiffs argue that *Williams v. Cigna* also addresses whether FLSA claims may be subjected to arbitration pursuant to an arbitration agreement with an employee, *Williams* does not reach such a determination. Rather, in *Williams,* the Fifth Circuit merely upheld an arbitration award in an ADEA case. *Williams,* 197 F.3d at 755 (discussing the standard of review of an arbitration award dictated by the FAA). In fact, if anything, *Williams* supports Defendants' contention that FLSA claims are arbitrable. The opinion states:

> This case involves a claim under the ADEA, but our decision will have implications for the review of arbitration claims under the FAA involving Title VII of the Civil Rights Act of 1964 ... and other federal employment rights statutes. Employees, as individuals, are protected by a wide variety of rights created by federal statutes. These include Title VII, which protects individuals against discrimination in employment and seeks to assure equal employment opportunities; the Fair Labor Standards Act (FLSA), which provides employees with a judicial remedy in the federal courts to enforce the statutory right to minimum wages and overtime pay claims against employers; and the ADEA, which protects employees 40 years of age or older who are fired or discriminated against because of age.

*Id.* at 758 (citations omitted). The Fifth Circuit's mention of the FLSA in the context of a discussion of *Williams*'s implications for the review of arbitration claims under federal employment statutes clearly implies that FLSA claims are arbitrable. Although Plaintiffs argue that the *Williams* court's description of the FLSA as providing a "judicial remedy in the federal courts" means that FLSA claims may only be resolved through the judicial process, the court's statement, when taken in context, is more of a description of the statute than a restriction on the fora in which such claims may be brought. In sum, no Fifth Circuit case prevents this Court from ordering that Plaintiffs' FLSA claims be arbitrated.

---

**3.** The very statement from *Barrentine* that the Fifth Circuit summarized was rescinded by the Supreme Court in *Gilmer,* in which the Court explained that Gilmer's objection that arbitration procedures do not provide for "broad equitable relief" was inapposite because the arbitration rules in question, pro-vided by the NYSE, "do not restrict the types of relief an arbitrator may award." *Gilmer,* 500 U.S. at 32, 111 S.Ct. 1647. As will be discussed more below, the arbitration rules in question in this case also do not limit the types of relief available.

### E. The Southern District of Texas: *Hampton*

Although the Fifth Circuit has not pronounced upon the issue, a district court within this circuit has held that FLSA claims are arbitrable. *See Hampton v. ITT Corp.*, 829 F.Supp. 202 (S.D.Tex.1993) (Rosenthal, J.). In *Hampton*, the court granted the defendant ITT Corporation's motion to stay during arbitration. As in the case at hand, the *Hampton* plaintiffs' FLSA claim was based on the employer's alleged refusal to pay plaintiffs for overtime hours they had worked. *Id.* at 203. During their employment with ITT, the plaintiffs had all signed employment contracts containing the following provision: "ITT CFC and EMPLOYEE agree that any dispute between them or claim by either against the other or any agent or affiliate of the other shall be resolved by binding arbitration ...." *Id.* In determining whether the FAA required submission of the claim to arbitration, the court concluded, "[t]he fact that plaintiffs' suit is based on the [FLSA] does not preclude arbitration." *Id.* at 204. The court further explained,

> The Supreme Court has recently held that statutory claims may be the subject of an enforceable arbitration agreement. In *Gilmer*, the Court held that an arbitration agreement would be enforced as to claims under the [ADEA]. The *Gilmer* Court stated that a party should be held to its agreement to arbitrate unless "Congress itself has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue."

> Plaintiffs have not made any showing that Congress intended to preclude arbitration as to the FLSA claims. Nor is there any showing of inconsistency or conflict between arbitration and the FLSA's underlying purposes.

*Id.* The court therefore stayed the case and sent the parties to arbitration.[4]

In consideration of *Barrentine, Gilmer, Kuehner,* and *Hampton,* this Court finds that FLSA claims are subject to arbitration pursuant to an arbitration agreement falling under the FAA.

### III. Does *Newman v. Countrywide* Prevent This Court from Ordering Arbitration?

■ Plaintiffs argue that, even if the Court finds that, in general, FLSA claims are subject to arbitration, collateral estoppel applies in this case to prevent this Court from directing the parties to arbitration at this stage of the proceeding. *See* Response at 3. Plaintiffs' collateral estoppel argument stems from Judge Buchmeyer's decision in *Newman v. Countrywide Home Loans, Inc.*, No. 3–00–CV–2305–R, 2001 WL 1148943 (N.D.Tex. Sept.20, 2001), in which Judge Buchmeyer, accepting the Findings and Recommendation of the U.S. Magistrate Judge, granted the plaintiffs' Motion for Nationwide Notification. In that motion, the plaintiffs sought an order authorizing that, for opt-in purposes, notice of the suit be given to similarly situated individuals, i.e., "persons who are presently employed or [were] previously employed by Defendants as Account Executives in Plano, Texas and in Rosemead, California." *Newman,* 2001 WL 1148943, at *1. One of the defendants, Countrywide Home Loans, argued that "similarity [was] not present because the vast number of its Account Executives at the two locations signed a Mutual Agree-

---

4. The court ordered the parties to submit a joint status report as to the progress of the arbitration proceedings six months after the date of the order, and every three months after the initial status report. *Id.* The court also ordered the parties to advise the court of the outcome of the arbitration within ten days after the conclusion of the arbitration proceeding. *Id.*

ment to Arbitrate Claims when employed." *Id.* Although finding that the defendant "correctly argue[d] that under such circumstances an affected employee would have to submit any FLSA claim to an arbitrator rather than seeking relief in a judicial proceeding," Judge Buchmeyer held that "[t]he mere fact that an injured party may be required to pursue claims in an arbitral forum rather than a judicial forum is not a sufficient distinction to warrant denial of Plaintiffs' motion to authorize notice." *Id.*

Plaintiffs characterize Judge Buchmeyer's holding in the following way: "Judge Buchmeyer[ ] held that notification must be sent out to Defendants' current and former Account Executives[ ] before determining which, if any, of those Account Executives should be forced to arbitrate their claims." *Id.* Although Plaintiffs are correct insofar as Judge Buchmeyer held that potential opt-in plaintiffs should be notified of the suit before the court determined whether any of the opt-in plaintiffs' claims should be referred to arbitration, Plaintiffs are wrong in arguing that Judge Buchmeyer's holding related to the named plaintiffs in the case. As is clear from the docket sheet in that case, Judge Buchmeyer sent all of the *named* plaintiffs who had signed arbitration agreements to arbitration ten months before he ruled on plaintiffs' nationwide notification motion. *See* Agreed Order on Motion to Compel Arbitration and to Stay Proceedings, entered December 19, 2000. The only named

plaintiffs left in the suit when Judge Buchmeyer decided the plaintiffs' nationwide notification motion were those who did not sign arbitration agreements. Thus, Plaintiffs are clearly incorrect in contending that Judge Buchmeyer thought it inappropriate to send the named plaintiffs to arbitration before ordering nationwide notification, and Judge Buchmeyer's decision cannot be used as a basis for collateral estoppel. If anything, the *Newman* case shows that the issue of whether the named plaintiffs must arbitrate their claims should be decided well before the nationwide notification issue is reached.

## IV. Do the Arbitration Agreements Deprive Plaintiffs of Substantive FLSA Rights So As To Prevent This Court from Ordering Arbitration?

■ Plaintiffs next attack the specific arbitration agreements at issue in this case, contending that Plaintiffs' FLSA claims should not be submitted to arbitration because the arbitration agreements at issue "deprive Plaintiffs of substantive rights provided by the FLSA." Plaintiffs argue that the agreements deny their rights to proceed collectively,[5] to obtain necessary discovery, and to receive attorney's fees, costs, and liquidated damages should they prevail. The first two complaints can be dispensed with summarily under *Gilmer*. As discussed above, *Gilmer* held that the inability to proceed as a class action [6] and the limitations on discov-

---

**5.** The Code of Procedure for the National Arbitration Forum, the arbitration group through which the parties' arbitration is to take place, provides for joinder of parties only if all parties to the arbitration consent. *See* NAF Code of Procedure at 15–16.

**6.** Importantly, the *Gilmer* Court came to the conclusion that the lack of a right to proceed collectively in arbitration did not warrant a finding that ADEA claims were nonarbitrable despite the fact that the ADEA explicitly pro-

vides for class action suits, doing so through reference to the FLSA's own class action provision. The ADEA's remedies provision, 29 U.S.C. § 626(b), states that "[t]he provisions of this chapter shall be enforced in accordance with the powers, remedies, and procedures provided in ... section[ ] ... 216 (except for subsection (a) thereof) ... of [title 29] ...." *Id.* (emphasis added). 29 U.S.C. § 216(b), the FLSA's remedies provision, explains that "[a]n action may be maintained against any employer ... in any Federal or

ery were not substantive rights that prevented arbitration of the claims. *See Gilmer*, 500 U.S. at 31–32, 111 S.Ct. 1647.

Furthermore, Plaintiffs' arguments relating to attorneys' fees, liquidated damages, and costs are simply incorrect. In this case, the type of relief the arbitration panel may award is unlimited. The Code of Procedure for the National Arbitration Forum (NAF), which is designated in the contracts between the parties, provides that "[a]rbitrators may grant any remedy or relief allowed by applicable substantive law and based on a Claim, Response, or Request properly submitted by a Party under this Code." NAF Code of Procedure at 17. Thus, the arbitrator has power to award liquidated damages. Although Plaintiffs argue that the parties' arbitration agreements restrict the amount of costs and attorneys' fees that can be awarded because the contracts provide that "[e]ach party shall pay for each party's own costs and attorneys' fees, if any," the contracts also state that "the arbitrator may, in his or her discretion, permit the prevailing party to recover fees and costs only to the extent permitted by applicable law." Contract ¶ 8. Thus, the arbitrator has the power to award attorneys' fees and costs.

Plaintiffs contend, however, that because an award of attorneys' fees under the FLSA is non-discretionary-Plaintiffs must

receive attorneys' fees and costs if they prevail-and the arbitrator's power to award attorneys' fees and costs is discretionary, Plaintiffs are robbed of the right to mandatory attorneys' fees. Plaintiffs fail to note that the contracts also provide that "all arbitrations covered by this Agreement shall be adjudicated in accordance with the state or federal law which would be applied by a United States District Court sitting at the place of the hearing." Contract ¶ 2. The Court interprets this provision to mean that if attorneys' fees and costs are mandated by statute, the arbitrator must award them. In fact, if Plaintiffs prevail and the arbitrator fails to award the fees, in contravention of the FLSA to that extent, the arbitration award can be vacated either at the district court or circuit level. *See Williams,* 197 F.3d at 761 ("The federal district courts and courts of appeals are charged with the obligation to exercise sufficient judicial scrutiny to ensure that arbitrators comply with their duties and the requirements of the statutes . . . . [T]he judicial review of arbitral adjudication of federal statutory employment rights under the FAA . . . 'must be sufficient to ensure that arbitrators comply with the requirements of the statute' at issue."). The contracts provide that the parties have the right to appeal the arbitration award based on "any alleged errors of law." Contract ¶ 11. Thus, Plaintiffs'

State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves *and other employees similarly situated." Id.* Since the ADEA's class action provisions are identical to those of the FLSA, the *Gilmer* Court's finding that the absence of class action rights in an ADEA arbitration did not render the arbitration agreement unenforceable must be equally applicable to the FLSA.

Additionally, it is important to note that one factor in the *Gilmer* Court's determination that a plaintiff could be compelled to arbitrate her ADEA claim, despite her loss of the right to proceed collectively, was that the EEOC

had independent power to file suit seeking class-wide relief. The FLSA similarly provides that the Secretary of Labor may initiate suit on behalf of a class of employees injured by an employer's violative conduct. Therefore, Plaintiffs' claim that the right to proceed collectively under the FLSA is a substantive right that cannot be relinquished in an arbitration agreement is no more availing than Gilmer's argument that the right to proceed collectively in the ADEA context was inalienable, since both statutes provide an alternative mechanism through which suits on behalf of classes of employees may be brought.

rights to these amounts are recognized in the arbitration contracts and will be enforced by the district and appellate courts that review the arbitration award.

■ Plaintiffs also complain that the fee structure embodied in the arbitration contracts and in the NAF Code of Procedure discourages Plaintiffs from bringing their claims in an arbitration proceeding. The contracts provide that Plaintiffs must pay a $125 filing fee, the employer must pay for the first day of hearing costs, and the employee and employer must split all hearing costs for any additional days. Contract ¶ 8. Plaintiffs argue that the potential expense of the extra hearing days is prohibitive given that the cost would be $9,000 for every additional hearing day. Also, costs are attached to all motions and discovery, ranging from approximately $100 to $4,500. Defendants attempted to resolve this issue by sending a Memorandum to all of their employees on October 17, 2000 that revised the "Fees and Costs" paragraph of the arbitration agreements so that the Defendants are now required to pay all arbitration costs except the initial $125 filing fee. They represent that this Memorandum was distributed to all of Defendants' employees and covers all arbitration claims filed on or after September 22, 2000. Thus, Defendants explain that "Plaintiffs will never pay more than a total of $125 in arbitration fees and costs."

Problematically, however, Defendants did not follow the procedures outlined in the arbitration contracts to amend the agreements. The agreements provide that both parties (employer and employee) agree in writing to the change, but that was not done in regard to the Memorandum issued by Defendants. Thus, the original fee-splitting provision in the contracts is still valid. Under that provision,

a plaintiff's arbitration fees could potentially be enormous, and the Supreme Court has found that such fee-splitting arrangements may hamper an employee's ability to bring his claims in arbitration, *see Green Tree Financial Corp.-Alabama v. Randolph*, 531 U.S. 79, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000) ("It may well be that the existence of large arbitration costs could preclude a litigant ... from effectively vindicating her federal statutory rights in the arbitral forum."). To remedy this difficulty, the Court concludes that it should follow the path taken by another Court in this District in *Jones v. Fujitsu Network Communications*, 81 F.Supp.2d 688, 693 (N.D.Tex.1999) (Kendall, J.), which, when confronted with the same situation, invalidated the fee-splitting arrangement within the contracts, but pursuant to the severability clause in the applicable contracts, enforced the rest of the arbitration agreement. *Id.* The Court ordered the defendant to pay for all arbitrator and facility fees. *Id.* This Court determines that it should follow the same course, by invalidating the fee-splitting arrangement in paragraph 8 of the arbitration contract, but holding the rest of the contract enforceable under the severability clause found in paragraph 15 of the contract,[7] and ordering Defendants to be responsible for all fees incurred in the arbitration.

## V. Were Plaintiffs Fraudulently Induced into Signing the Agreements?

■ Plaintiffs' final argument is that Defendants fraudulently induced Plaintiffs into signing the arbitration agreements "by representing that Plaintiffs were not waiving any of their substantive rights." Plaintiffs point to paragraph 18 in a docu-

7. The severability clause in the agreements at issue provides that, "[i]f any provision of this Agreement or the Code is adjudged to be void or otherwise unenforceable ... adjudication shall not affect the validity of the remainder of the Agreement or the Code." Contract ¶ 15.

ment entitled "Questions and Answers about the Arbitration Agreement to Arbitrate Claims," which was given to them before they signed the arbitration agreement. *See* Exhibit F to Plaintiffs' Response. That paragraph provides:

*18. If I sign the Agreement, am I giving up any substantive legal rights?*

The Agreement provides that an arbitrator, rather than a judge or jury, will decide issues that are not resolved through internal channels such as the Company's Problem Solving Process. Otherwise, your substantive legal rights remain intact.

Plaintiffs complain that this is a misrepresentation, and that they relied on it when signing the agreement. However, the Court finds that the representation is not untrue. Plaintiffs will not be giving up their substantive legal rights under the FLSA by submitting to arbitration. As stated above, the Supreme Court has held that the right to proceed collectively is not a substantive legal right, nor is the right to unlimited discovery. Plaintiffs will be entitled to attorneys' fees, costs, and liquidated damages in arbitration, so the arbitral forum will not deprive Plaintiffs of these rights. Plaintiffs therefore cannot identify any substantive rights they will lose by having their FLSA claims resolved in arbitration. Thus, Plaintiffs cannot make out a fraudulent inducement claim that prevents the Court from ordering arbitration.

## VI. Conclusion

In conclusion, Plaintiffs have not met their burden of showing that the FLSA claims are ineligible for submission to arbitration. Defendants proffered valid arbitration agreements, and Plaintiffs have failed to show that the agreements are invalid due to fraud or that they should be voided on public policy grounds. In conclusion, the Court concurs with Judge Rosenthal and the Ninth Circuit and finds the named Plaintiffs' FLSA claims eligible for arbitration. The Court therefore GRANTS Defendants' Motion to Compel Arbitration as to the four named Plaintiffs, Loy Carter, Geoff Burkhart, Heather Young, and Deborah Robinson, but holds the fee-splitting arrangement as contemplated in the agreement void, and orders Defendants to pay all arbitration costs. Plaintiffs's counsel are directed to send this Opinion to all individuals who have filed consents to become party plaintiff and who have signed the same form of arbitration agreement as did the Plaintiffs, so that they will be apprised that they must pursue their claims in the arbitral forum provided for in the agreements.

Because one opt-in Plaintiff, Lisa Barnett, did not execute an arbitration agreement, the Court will allow thirty days for an amendment of the Complaint to substitute Ms. Barnett as a named Plaintiff. If such an amendment is filed, the Court will sever out Loy Carter, Geoff Burkhart, Heather Young, and Deborah Robinson's case from Ms. Barnett's, and Ms. Barnett may proceed as the named Plaintiff in this action, and may file, if she desires, a Motion for Nationwide Notification. If such an amendment is not filed, the case will be dismissed, as all of the representative Plaintiffs are required to pursue their claims in arbitration. In regard to named Plaintiffs Carter, Burkhart, Young, and Robinson, they are ordered to arbitrate their claims against Defendants pursuant to their agreements, and their claims will be dismissed by this Court on April 5, 2002. Because Carter, Burkhart, Young, and Robinson must bring their claims in an arbitral forum, the Court DENIES their Motion to Allow Nationwide Notification, filed on December 18, 2001, and DENIES as MOOT Defendants' Motion for Stay of Consideration of Plaintiff's Motion to Allow Nationwide Notification, filed on

January 7, 2002. The Motion to Allow Nationwide Notification is denied without prejudice to Ms. Barnett's refiling of the same, if she is substituted as the named Plaintiff.

SO ORDERED.