**Kay V. KUEHNER, Plaintiff–Appellant,**

v.

**DICKINSON & COMPANY, an Iowa corporation, Defendant–Appellee.**

No. 94–56529.

United States Court of Appeals, Ninth Circuit.

Argued March 6, 1996.

Decided May 17, 1996.

As Amended July 5, 1996.

Michael E. Merrill, Stephen J. Schultz, Mark T. Bennett, John M. Julius III, Merrill, Schultz & Wolds, San Diego, California, for plaintiff-appellant.

Lori A. Bowman, William W. Oxley, Scott G. Lawson, Orrick, Herrington & Sutcliffe, Los Angeles, California, for defendant-appellee.

Before BROWNING, WALLACE and FARRIS, Circuit Judges.

FARRIS, Circuit Judge:

I.

Kay Kuehner sued Dickinson & Co. for violations of the Fair Labor Standards Act and wrongful discharge under California tort law. She appeals the district court's interlocutory order staying proceedings pending the arbitration of her claims. We have jurisdiction pursuant to 28 U.S.C. § 1292(b) and 9 U.S.C. § 16(b). We affirm.

Dickinson & Co. hired Kuehner as a securities sales representative on September 14, 1992. Kuehner alleges that two months after she was hired, she requested pay at a mini-

mum wage for all of the hours she worked. Kuehner alleges that Dickinson & Co. refused, and terminated her on November 18, 1992.

Kuehner had registered with the National Association of Securities Dealers at the beginning of her employment by signing a Form U–4, a standardized contract used throughout the securities industry. Paragraph 5 provides:

> I agree to arbitrate any dispute, claim or controversy that may arise between me and my firm, or a customer, or any other person, that is required to be arbitrated under the rules, constitutions, or by-laws of the [NASD] as may be amended from time to time and that any arbitration award rendered against me may be entered as a judgment in any court of competent jurisdiction.

The SEC approved amendments to the NASD Code of Arbitration Procedure after Dickinson & Co. fired Kuehner but before Kuehner sued. At the time of Kuehner's termination, Part I, § 1 provided that:

> This Code of Arbitration Procedure is prescribed ... for the arbitration of any dispute, claim, or controversy arising out of or in connection with the business of any member of the [NASD], with the exception of disputes involving the insurance business of any member which is also an insurance company:
> (1) between or among members;
> (2) between or among members and public customers, or others; ....

Part II, § 8 provided that:

> Any dispute, claim, or controversy eligible for submission under Part I of this Code between or among members and/or associated persons, and/or certain others, arising in connection with the business of such member(s) or in connection with the activities of such associated person(s), shall be arbitrated under this Code, at the instance of:
> (1) a member against a member;
> (2) a member against a person associated with a member or a person associated with a member against a member....

The SEC approved amendments to these provisions on August 31, 1993. The new Part I, § 1 makes eligible for arbitration "[a]ny dispute, claim, or controversy ... arising out of the employment or termination of employment of associated person(s) with any member." The new Part II, § 8 requires arbitration for "any dispute, claim, or controversy ... eligible for submission under Part I of this Code between or among members and/or associated persons ... or arising out of the employment or termination of employment of such associated person(s) with such member...." These amendments became effective on October 1, 1993.

Kuehner sued Dickinson & Co. on November 17, 1993, claiming unpaid minimum wages and overtime in violation of FLSA §§ 6, 7 and retaliatory discharge in violation of FLSA § 15(a)(3), *see* 29 U.S.C. §§ 201 *et seq.*, and wrongful discharge under California tort law. Kuehner demanded a jury trial. The district court granted Dickinson & Co.'s motion to stay proceedings pending arbitration pursuant to 9 U.S.C. § 3. The district court concluded that Kuehner entered an enforceable arbitration contract, that the new NASD rule governed Kuehner's suit, and that even if it did not, the old NASD rule required arbitration. The district court amended its order by adding the following language:

> Because this order presents controlling questions of law as to which there is substantial ground for difference of opinion and because an immediate appeal herefrom may materially advance the ultimate termination of the litigation, it is hereby ordered, pursuant to 28 U.S.C. § 1292(b), that this order is certified for interlocutory appeal to United States Court of Appeals for the Ninth Circuit.

A motions panel for the Ninth Circuit granted Kuehner's petition for permission to appeal.

## II.

### A. *Jurisdiction*

Dickinson & Co. contends that we lack jurisdiction. It argues that the order certified by the district court does not involve a "controlling question of law." *See* 28 U.S.C. § 1292(b). Although we give deference to the ruling of the motions panel, we

have an independent duty to confirm that our jurisdiction is proper. We hold that the motions panel did not err.

■ Dickinson & Co. argues that under *In re Cement Antitrust Litigation,* 673 F.2d 1020 (9th Cir.1982), no question of law can be controlling unless it determines who will win on the merits. But in *Cement Litigation* we stated that "issues collateral to the merits" may be the proper subject of an interlocutory appeal. 673 F.2d at 1027 n. 5. We agree with the district court that an order may involve a controlling question of law if it could cause the needless expense and delay of litigating an entire case in a forum that has no power to decide the matter. A contrary holding would render meaningless the acknowledgment in 9 U.S.C. § 16(b) that an interlocutory order pursuant to the Federal Arbitration Act may in some circumstances satisfy the requirements of 28 U.S.C. § 1292(b).

## B. *Knowing Waiver*

Kuehner contends that the district court failed to recognize that Congress has restricted the enforcement of contracts to arbitrate FLSA claims by requiring a "knowing waiver" of the right to a judicial forum.

■ The FAA provides that "a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA not only reversed the judicial hostility to the enforcement of arbitration contracts, but also created a rule of contract construction favoring arbitration. *Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 24–25, 111 S.Ct. 1647, 1651, 114 L.Ed.2d 26 (1991) (FAA manifests a "liberal federal policy favoring arbitration agreements"); *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24–25, 103 S.Ct. 927, 941–42, 74 L.Ed.2d 765 (1983) ("any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration").

The Supreme Court has held that despite the FAA, contracts to arbitrate statutory claims are unenforceable if Congress intended to preclude a waiver of the plaintiff's right to a judicial forum. *Shearson/American Express Inc. v. McMahon,* 482 U.S. 220, 226, 107 S.Ct. 2332, 2337, 96 L.Ed.2d 185 (1987). But the Supreme Court has seldom found congressional intent to preclude such a waiver, and has enforced contracts to arbitrate claims under the Sherman Act, the Racketeer Influenced and Corrupt Organizations Act, and the Securities Exchange Act of 1934. *See Gilmer,* 500 U.S. at 26, 111 S.Ct. at 1652 (citing cases). It has also enforced a contract to arbitrate claims under the Age Discrimination in Employment Act. *Id.* at 33, 35, 111 S.Ct. at 1655, 1656 ("Mere inequality of bargaining power ... is not a sufficient reason to hold that arbitration agreements are never enforceable in the employment context.").

■ Just as Congress may preclude a waiver of the plaintiff's right to a judicial forum, it may create other restrictions to the enforcement of arbitration contracts. In *Prudential Ins. Co. v. Lai,* we held that it was "apparent from the text and legislative history of Title VII" that Congress had required a "knowing" waiver of the right to a judicial forum. 42 F.3d 1299, 1304 (9th Cir. 1994), *cert. denied,* —— U.S. ——, 116 S.Ct. 61, 133 L.Ed.2d 24 (1995). *Lai* reversed the district court order staying proceedings and directing arbitration because the employees who had signed the Form U–4 lacked specific knowledge that they might have to arbitrate sexual discrimination claims; neither the Form U–4 nor the old NASD rule it incorporated "refer[ed] to employment disputes" or "describ[ed] any disputes the parties agreed to arbitrate." *Id.* at 1305. *Lai* implied that by imposing a knowing waiver requirement, Congress had relaxed the federal rule of contract construction favoring arbitration in the Title VII context.

■ Kuehner bears the burden of proving that Congress restricted the enforcement of contracts to arbitrate FLSA claims. *See McMahon,* 482 U.S. at 227, 107 S.Ct. at 2337. Unable to identify support in the text or legislative history of the FLSA, she cites

dicta in *Barrentine v. Arkansas–Best Freight Sys., Inc.* that questions the competence of arbitrators to decide FLSA claims. 450 U.S. 728, 743, 101 S.Ct. 1437, 1446, 67 L.Ed.2d 641 (1981). Kuehner's reliance on *Barrentine* is unpersuasive. The Supreme Court wrote in *Gilmer* that its previous expressions of "mistrust of the arbitral process" had been "undermined" by subsequent cases, 500 U.S. at 34 n. 5, 111 S.Ct. at 1656 n. 5, and that *Barrentine* provides "no basis" for the refusal to enforce an arbitration contract because it was "not decided under the FAA." *Id.* at 35, 111 S.Ct. at 1657.

Kuehner fails to carry her burden of showing that when Congress enacted the FLSA, it imposed a knowing waiver requirement similar to that which exists under Title VII.

### C. *The New NASD Rule*

■ Kuehner and Dickinson & Co. agree that the new NASD rule requires arbitration of employment disputes. Kuehner contends, however, that under the Form U–4 the old NASD rule governs. She relies on the fact that her termination occurred before October 1, 1993. Dickinson & Co. counters that the new NASD rule governs, and that even if it does not, the old NASD rule requires arbitration. Because we hold that the new NASD rule governs, we need not interpret the old NASD rule.[1]

■ Kuehner agreed in signing the Form U–4 to be bound by the NASD rules "as may be amended from time to time." A new procedural rule will usually govern suits filed after its effective date regardless of when the relevant conduct occurred. *Landgraf v. USI Film Prods.*, —— U.S. ——, ——, 114 S.Ct. 1483, 1502, 128 L.Ed.2d 229 (1994). Although we have not yet addressed the issue, two district courts have applied the new NASD rule to suits filed after October 1, 1993, even though the relevant conduct occurred earlier. *See Pitter v. Prudential Life Ins. Co.*, 906 F.Supp. 130, 134–35 (E.D.N.Y. 1995) (directing arbitration of Title VII claim

on the grounds that "it is entirely appropriate to hold Pitter to compliance with nonsubstantive rules that took effect almost six months before he filed his lawsuit"); *Wojcik v. Aetna Life Ins.*, 901 F.Supp. 1282, 1289 (N.D.Ill.1995) (directing arbitration of state fraud and contract claims because "Wojcik filed his claim after the effective date of the [new NASD rule]").

■ We must decide whether the new NASD rule deprives Kuehner of substantive rights. An employee who sues under the FLSA has the right to a jury trial, *see Lorillard v. Pons*, 434 U.S. 575, 580 n. 7, 98 S.Ct. 866, 870 n. 7, 55 L.Ed.2d 40 (1978); *Lehman v. Nakshian*, 453 U.S. 156, 164 n. 11, 101 S.Ct. 2698, 2703 n. 11, 69 L.Ed.2d 548 (1981), and may be entitled to a broad range of legal and equitable remedies. *See* 29 U.S.C. § 216(b). Kuehner does forfeit her right to a jury trial, but this right is not substantive. *See Landgraf*, —— U.S. at ——, 114 S.Ct. at 1505 (statutory inclusion of right to a jury trial is a "procedural change of the sort that would ordinarily govern in trials conducted after its effective date"); *See Gilmer*, 500 U.S. at 26, 111 S.Ct. at 1652 ("by agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute"). Kuehner does not forfeit her right to the FLSA's remedies. Recent Supreme Court cases confirm that an arbitrator would have the full power to provide the legal and equitable remedies available. *See Mastrobuono v. Shearson Lehman Hutton, Inc.*, —— U.S. ——, —— – ——, 115 S.Ct. 1212, 1218–19, 131 L.Ed.2d 76 (1995) (absent contrary contractual provision, arbitrator has power to award punitive damages); *Gilmer*, 500 U.S. at 32, 111 S.Ct. at 1655 (arbitrator has power to fashion equitable relief).

The new NASD rule governs under the Form U–4. Because the rule does not affect Kuehner's substantive rights, and because Kuehner sued Dickinson & Co. after October 1, 1993, the date the new rules became effec-

---

1. The Tenth, Eleventh, and Seventh Circuits have split on whether the old NASD rule requires arbitration of employment disputes, each circuit interpreting the rule differently. *See Armijo v. Prudential Ins. Co.*, 72 F.3d 793, 798–800 (10th

Cir.1995) (arbitration required); *Kidd v. Equitable Life Assurance Soc'y*, 32 F.3d 516, 518–20 (11th Cir.1994) (arbitration required); *Farrand v. Lutheran Bhd.*, 993 F.2d 1253 (7th Cir.1993) (arbitration not required).

tive, the rule requiring arbitration governs Kuehner's suit.

AFFIRMED.