Rachel RENTERIA, Plaintiff–Appellee,

v.

**PRUDENTIAL INSURANCE COMPANY OF AMERICA; Gary Westerman; Robert Schultz; Darryl Dalton, does I through X, inclusive and Roe Corporations I through X, inclusive, Defendants–Appellants.**

No. 95–16659.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 13, 1996.

Decided May 20, 1997.

Patrick N. Chapin, Las Vegas, Nevada, for plaintiff-appellee.

Kenwood C. Youmans, Seyfarth, Shaw, Fairweather & Geraldson, Los Angeles, California, for defendants-appellants.

Before: REINHARDT and RYMER, Circuit Judges, and TANNER, District Judge.*

## OPINION

REINHARDT, Circuit Judge:

Defendants Prudential Insurance Company, Gary Westerman, Robert Schultz, and Darryl Dalton (hereinafter referred to collectively as "Prudential") appeal from the order of the district court denying their motion to compel arbitration. Our decision in this case follows from our decision in *Prudential Insurance Co. of America v. Lai*, 42 F.3d 1299 (9th Cir.1994). We affirm the order of the district court.

### BACKGROUND

On March 22, 1992, Prudential Insurance Company hired Rachel Renteria as a registered representative to solicit and sell securities and insurance products. Before joining Prudential, she completed a Uniform Application for Securities Industry Registration or Transfer, also known as a Form U–4, which contained an arbitration clause, binding Renteria to arbitrate:

> any dispute, claim or controversy that may arise between me and my firm, or a customer, or any other person, that is required to be arbitrated under the rules, constitutions, or by-laws of the organizations indicated in Item 10 as may be amended from time to time and that any arbitration award rendered against me may be entered as a judgment in any court of competent jurisdiction.

The organization indicated in Item 10 was the National Association of Securities Dealers (NASD) and, at the time Renteria signed

the Form U–4, the NASD Code provided that:

> [a]ny dispute, claim or controversy eligible for submission under Part I of this Code between or among members and/or associated persons, and/or certain others, arising in connection with the business of such member(s) or in connection with the activities of such associated person(s), shall be arbitrated under this Code.

On October 1, 1993, the NASD Code was amended to include claims "arising out of the employment or termination of employment of such associated person(s) by and with such member," as a category of claims subject to disposition by arbitration. Six days later, Prudential fired Renteria.

On October 7, 1994, Renteria filed a complaint against Prudential alleging various claims including sexual harassment under Title VII and state statutes. The case was removed to federal court where Prudential successfully moved for summary judgment on all but the sexual harassment claims. Prudential also moved to compel arbitration of the sexual harassment claims, but the district court denied the motion, finding the case "on all fours" with our decision in *Lai*, 42 F.3d 1299:

> Prudential is a party in both cases; both cases are sexual discrimination cases; in both cases the plaintiff signed the same U–4 forms containing an arbitration clause. In both cases, the issue is whether the arbitration clause signed by plaintiffs includes Title 7 Claims.
>
> The Court in *Lai* held that the plaintiffs were not bound by any valid agreement to arbitrate their sexual discrimination claims, because the plaintiffs could not have understood that they were agreeing to arbitrate sexual discrimination suits. It is the opinion of this Court that *Lai* is indistinguishable, and the Court should deny the motion to compel arbitration under *Lai*.

Prudential then filed this appeal.

### DISCUSSION

■ In *Lai*, we held that "a Title VII plaintiff may only be forced to forego her

---

* The Honorable Jack E. Tanner, Senior United States District Judge for the Western District of Washington, sitting by designation.

statutory remedies and arbitrate her claims if she has knowingly agreed to submit such disputes to arbitration."[1] *Id.* at 1305. This "knowing waiver" requirement, which we concluded was "apparent from the text and legislative history of Title VII," *id.* at 1304, "reflects our public policy of protecting victims of sexual discrimination and harassment through the provisions of Title VII and analogous state statutes"—"a policy that is at least as strong as our public policy in favor of arbitration." *Id.* at 1305.

In *Lai,* the plaintiffs were employed by Prudential Insurance Company as sales representatives. As part of their employment applications, they were asked to sign a Standard Application for Securities Industry Registration (U–4 form), like the one signed by Renteria. The U–4 form signed by the plaintiffs in *Lai* contained the following provision:

> I agree to arbitrate any dispute, claim or controversy that may arise between me or my firm, or a customer, or any other person, that is required to be arbitrated under the rules, constitutions, or bylaws of the organizations with which I register.

*Id.* at 1302. They subsequently registered with the National Association of Securities Dealers, which, at the time in question, required the arbitration of

> [a]ny dispute, claim or controversy eligible for submission under part I of this Code between or among members and/or associated persons . . . arising in connection with the business of such member(s) or in connection with the activities of such associated person(s). . . .

*Id.* Lai and her co-plaintiff Viernes later brought a state law sexual harassment and discrimination claims against Prudential, which sought to compel arbitration under the U–4 form and the NASD Code. *Id.* at 1301. Lai and Viernes asserted that they were not given the opportunity to read the U–4 form before they signed it and were not given a copy of the NASD Code. *Id.* They claimed

ignorance of the arbitration agreement, and further asserted that even had they been aware of the agreement to arbitrate disputes, they would not have known they were agreeing to arbitrate their employment discrimination claims. *Id.* at 1303. We agreed and held that

> even assuming that appellants were aware of the nature of the U–4 form, they could not have understood that in signing it, they were agreeing to arbitrate sexual discrimination suits. The U–4 form did not purport to describe the types of disputes that were to be subject to arbitration. Moreover, even if appellants had signed a contract containing the NASD arbitration clause, it would not put them on notice that they were bound to arbitrate Title VII claims. That provision did not even refer to employment disputes.

*Id.* at 1305. That holding controls the outcome of the case currently before us.

Like the plaintiffs in *Lai,* Renteria signed the U–4 form as a condition of her employment with Prudential Insurance Company and registered with NASD, thereby becoming subject to its Code provisions. At the time Renteria signed the U–4 form and at the time she registered with the NASD, the arbitration provision in the NASD Code was exactly the same as that in effect when the plaintiffs in *Lai* signed their U–4 form and registered with NASD. To that extent, *Lai* and *Renteria* are indistinguishable.

The single difference of any significance between the cases is that the arbitration provision in the U–4 form signed by Renteria stated that the undersigned was bound to arbitrate all disputes listed in the NASD Code, "as may be amended from time to time." It is upon this difference that Prudential's appeal must rise or fall. We conclude that the "as amended" language does not take the case out of the *Lai* rule.

First, it is not altogether clear that the addition of the words "as may be amended from time to time" suggests a meaning dif-

---

1. Although plaintiffs in *Lai* brought their sexual harassment claims under state law, we analyzed the arbitrability of those claims under the requirements we held were imposed by Title VII. 42 F.3d at 1304. We noted that "parallel state anti-discrimination laws are explicitly made part of Title VII's enforcement scheme" and held that the same standard would thus apply. *Id.* at 1303 n. 1.

ferent from the provision the plaintiffs in *Lai* signed. Lai and her co-plaintiff agreed to arbitrate any claim "required to be arbitrated under the rules, constitutions, or bylaws of the organizations with which I register." 42 F.3d at 1302. Nothing in that language suggests that the agreements limited the rules to those as they existed at the time the plaintiffs registered. The "as amended" language of *Renteria* only makes explicit what may be implicit in the *Lai* provision.

More important, the "as may be amended from time to time" language simply does not cure the flaw the *Lai* court found in the agreement to arbitrate. As we expressly stated in *Lai,* "Our decision does not rest exclusively upon the precise language of the clause in the U–4 manual, for it is clear and undisputed on this record that the employment contract with Prudential that plaintiffs executed *did not describe any disputes that the parties agreed to arbitrate.*" 42 F.3d at 1305 (emphasis added). We then explicitly rejected the U–4 form and the NASD Manual as effective waivers of statutory rights because neither "described the types of disputes that were to be subject to arbitration" or "even refer[red] to employment disputes." *Id.* In the case at hand, the arbitration clause did not—any more than it did in *Lai*—"describe any disputes that the parties agreed to arbitrate." Simply adding the "as amended" language to the U–4 form did not accomplish that result.

▉ Prudential makes a number of further related arguments why *Lai* does not dictate the outcome in this case. None withstands analysis. First, it argues that the NASD Code, as amended at the time Renteria was terminated and brought her sexual harassment claims, adequately served to put members on notice that employment disputes were subject to mandatory arbitration. This argument is dependent on the further contention that the knowing waiver required

under *Lai* must be measured, not from "the time [Renteria] signed the Form U–4," but instead from either the time of her termination or the time the "suit is filed in derogation of the arbitration provision." However, this is simply inconsistent with the *Lai* requirement that employees must expressly agree to waive Title VII's statutory remedies knowing that they are doing so. Whether an agreement to arbitrate constitutes a knowing waiver of a right is analyzed from the time the agreement is made.[2]

Second, Prudential argues that to apply *Lai* in this case would render the "as may be amended" language a nullity, in contravention of well-settled rules of contract interpretation. *See, e.g., Brinderson–Newberg Joint Venture v. Pacific Erectors, Inc.,* 971 F.2d 272, 278–79 (9th Cir.1992) ("a contract should be interpreted so as to give meaning to each of its provisions"). We disagree. The *Lai* knowing waiver requirement applies only to a comparatively small class of claims arising under Title VII or similar laws—and derives from a recognition of the importance of the federal policy of protecting the victims of discrimination. Accordingly, *Lai* would have no bearing on various other classes of claims, and the as amended language would have full force and effect in a whole range of cases. *E.g., Kuehner,* 84 F.3d at 320. More important, if application of *Lai* rendered the as amended language a nullity, it would do so because the language contravened federal law. Thus, Prudential's argument is without substance.

Next, Prudential argues that Nevada state contract law renders the decision in *Lai* inapposite. It suggests that Nevada law "establishes a presumption that arbitration agreements are valid and binding, and intended to cover all disputes not specifically excluded," and that under Nevada law, the broad language of the NASD is "sufficient to make claims not expressly excluded arbitrable."

---

2. In *Kuehner v. Dickinson & Co.,* 84 F.3d 316 (9th Cir.1996), we held that the issue of arbitrability in a suit for violations of the Fair Labor Standards Act and wrongful discharge filed after the October 1, 1993 amendments to the NASD Code was governed by the new NASD rules rather than the old. *Id.* at 320–21. We expressly held in *Kuehner,* however, that the *Lai* "knowing

waiver" rule did not apply to FLSA claims. *Id.* at 320. Because we conclude that the *Kuehner* holding is intended to apply to cases in which there is no "knowing waiver" requirement, we decline to extend its analysis here. Accordingly, we do not reach the question of whether the NASD Code as amended satisfies the knowing waiver requirement of *Lai.*

This argument misconceives our decision in *Lai*. We held in *Lai* that there must be a knowing waiver of the statutory remedies *not* because we concluded that federal law under the Federal Arbitration Act insufficiently favors arbitration, but rather because we found that in enacting Title VII Congress intended such a result. Nevada state law, then, adds nothing to the equation. The *Lai* court held that the Title VII waiver must be knowing, notwithstanding federal policy favoring arbitration. State law cannot weaken the protections this court has concluded Congress intended to create under Title VII.

Finally, Prudential argues that the district court should have held an evidentiary hearing on the question of Renteria's subjective knowledge. We did not require such a hearing in *Lai*. Our decision turned instead on the language of the arbitration clauses. We held that a knowing waiver does not occur where neither the arbitration clauses nor any other written employment agreement expressly put the plaintiffs "on notice that they were bound to arbitrate Title VII claims." *Lai*, 42 F.3d at 1305. That holding is equally applicable here. No evidentiary hearing is required.

Accordingly, we conclude that the district court properly denied Prudential's motion to compel arbitration of Renteria's sexual harassment claims.

### CONCLUSION

Consistent with our holding in *Prudential Ins. Co. of America v. Lai*, Renteria cannot be compelled to arbitrate Title VII and related state law claims which she did not knowingly agree to arbitrate. Here, as in *Lai*, there was no express waiver of the statutory remedies in the written agreement executed by plaintiff. Accordingly, we affirm the decision of the district court.

AFFIRMED.