2013 COA 144

**TRIPLE CROWN AT OBSERVATORY VILLAGE ASSOCIATION, INC., Plaintiff–Petitioner,**

v.

**VILLAGE HOMES OF COLORADO, INC.; Peter Benson; Brian Graves; Mark McCallum; Rudy Hansch; Kelly Martinez; Ronald Hettinger; and Elyssa Blazier, Defendants–Respondents.**

Court of Appeals No. 13CA1390

Colorado Court of Appeals, Div. A.

Announced October 24, 2013

Sullan [2], Sandgrund, Perczak & Nuss P.C., Scott F. Sullan, Mari K. Perczak, David B. Shaw, Denver, Colorado, for Plaintiff–Petitioner

McConaughy & Sarkissian, P.C., Ivan A. Sarkissian, Christopher J. Metzalfe, Englewood, Colorado, for Defendants–Respondents

Opinion by JUDGE GABRIEL

¶ 1 In this construction-defect action, plaintiff, Triple Crown at Observatory Village Association, Inc. (the Association), petitioned this court, pursuant to C.A.R. 4.2, for interlocutory review of the district court's order granting the motion of defendants, Village Homes of Colorado, Inc., Peter Benson, Brian Graves, Mark McCallum, Rudy Hansch, Kelly Martinez, Ronald Hettinger, and Elyssa Blazier (collectively, the Village Defendants), to enforce an arbitration provision in the Association's declaration. We conclude that the order appealed involves controlling and unresolved questions of law and that our immediate review may promote a more orderly disposition of this litigation. Accordingly, we grant the petition for interlocutory review, setting forth our reasoning below. A later opinion will address the merits of this interlocutory appeal.

## I. Background

¶ 2 The Village Defendants created the Association, a Colorado nonprofit corporation, under section 7–122–102, C.R.S.2013, of the Colorado Revised Nonprofit Corporation Act (CRNCA) to manage, maintain, and repair the properties comprising the Triple Crown at Observatory Village condominium community (the Project). Under the Colorado Common Interest Ownership Act (CCIOA), §§ 38–33.3–101 to –402, C.R.S. 2013, defendant, Village Homes of Colorado, Inc., as the Project's Declarant, recorded the Declaration of Covenants, Conditions and Restrictions of Triple Crown Homes at Observatory Village Association, Inc. (the Declaration).

¶ 3 As pertinent here, Article 14 of the Declaration established a dispute resolution procedure for claims arising from, among other things, the design or construction of the improvements and structures on the Pro-

ject. Article 14 required that the parties arbitrate such claims if good faith negotiation and mediation efforts were unsuccessful. In addition, it appears undisputed that Article 14 could be amended only if the amendment were approved by Association members to which at least sixty-seven percent of the votes in the Association had been allocated, and any such amendment had to be done in compliance with CCIOA.

¶ 4 After disputes arose regarding the Village Defendants' responsibility for alleged construction defects in the Project, the Association sought to revoke Article 14. The Association appears to have obtained the votes to do so from forty-eight percent of the allocated interests within sixty days and sixty-seven percent of the allocated interests within 120 days. The Association then recorded an Amendment to the Declaration and filed this action, asserting claims for negligence and negligent repair, breach of implied warranty, misrepresentation and nondisclosure, violations of the Colorado Consumer Protection Act (CCPA), §§ 6–1–101 to –1121, C.R.S.2013, and breach of fiduciary duty.

¶ 5 The Village Defendants moved to enforce the arbitration provision of Article 14. In this motion, they argued that the Association's revocation of Article 14 was ineffective because the Association had failed to obtain written consent forms from sixty-seven percent of its members within the sixty-day time period set forth in section 7–127–107(2), C.R.S.2013, of the CRNCA. That section provides that no action of a nonprofit corporation taken without a meeting is effective unless the corporation receives the requisite number of member consent forms within sixty days after the earliest dated consent form is received by the corporation. *Id.*

¶ 6 The Association responded that its action was not subject to the CRNCA's time limit. It contended that CCIOA, and not the CRNCA, was applicable here and that CCIOA contains no sixty-day time limit to obtain the requisite consent forms. Alternatively, it disputed the enforceability of Article 14 on other statutory grounds. The Association further argued that its CCPA claims were not subject to arbitration.

¶ 7 By order dated June 20, 2013, the district court granted the Village Defendants' motion to enforce Article 14. The court reasoned that under section 38–33.3–301, C.R.S. 2013, of CCIOA, a unit owners' association like the Association here "shall be organized as a nonprofit, not-for-profit, or for-profit corporation or as a limited liability company in accordance with the laws of the state of Colorado." The court further observed that section 38–33.3–108, C.R.S.2013, of CCIOA provides that the law of corporations, among other laws, "supplement[s] the provisions of this article...."

¶ 8 Because the Association was established as a nonprofit corporation under CCIOA, the court concluded that it was subject both to CCIOA and to the structural and procedural provisions applicable to the chosen entity. In particular, the court determined that the Association was subject to section 7–127–107 of the CRNCA when it sought to amend the Declaration without holding a meeting. Because the Association failed to comply with that statute's sixty-day time limitation, the court concluded that the Association's purported revocation of Article 14 was invalid.

¶ 9 The court further rejected the Association's alternative argument that even if Article 14 survived and required that the Association submit its other claims to arbitration, its CCPA claims were not arbitrable. In holding that the CCPA claims, too, were arbitrable, the court distinguished *Ingold v. AIMCO/Bluffs, L.L.C. Apartments,* 159 P.3d 116 (Colo.2007), and *Lambdin v. District Court,* 903 P.2d 1126 (Colo.1995), on which the Association relied.

¶ 10 The Association then filed an unopposed motion for certification of the order pursuant to C.A.R. 4.2. The court granted that motion and certified the following three issues:

1. Whether C.R.S. § 38–33.3–217, the Colorado Common Interest Ownership Act's ("CCIOA's") procedure for amending a common interest community's Declaration by written consent, which imposes no time limit on obtaining such consent, supersedes C.R.S.

§ 7–127–107, the Colorado Revised Nonprofit Corporation Act ("CRNCA"), which imposes a 60–day time limit for the approval of certain "actions" taken without meetings, such as Declaration amendments.

2. Whether CCIOA's (C.R.S.38–33.3–302(2)'s) prohibition against a Declaration placing restrictions on the "power of the association to deal with the declarant that are more restrictive than the limitations imposed on the power of the association to deal with other persons," renders the Declaration's arbitration provision applicable only to the Declarant void and unenforceable.

3. Whether, as a matter of law, the Association's Colorado Consumer Protection Act ("CCPA") claim is subject to a predispute arbitration requirement inserted in the Declaration by the Declarant.

¶ 11 The Association then filed the present C.A.R. 4.2 petition in this court.

## II. Discussion

¶ 12 Section 13–4–102.1(1), C.R.S.2013, provides:

The court of appeals, under rules promulgated by the Colorado supreme court, may permit an interlocutory appeal of a certified question of law in a civil matter from a district court or the probate court of the city and county of Denver if:

(a) The trial court certifies that immediate review may promote a more orderly disposition or establish a final disposition of the litigation; and

(b) The order involves a controlling and unresolved question of law.

¶ 13 C.A.R. 4.2, in turn, provides, in pertinent part:

(a) Discretionary Interlocutory Appeals. Upon certification by the trial court, or stipulation of all parties, the court of appeals may, in its discretion, allow an interlocutory appeal of an order in a civil action. . . .

(b) Grounds for Granting Interlocutory Appeal. Grounds for certifying and allowing an interlocutory appeal are:

(1) Where immediate review may promote a more orderly disposition or establish a final disposition of the litigation; and

(2) The order involves a controlling and unresolved question of law. For purposes of this rule, an "unresolved question of law" is a question that has not been resolved by the Colorado Supreme Court or determined in a published decision of the Colorado Court of Appeals, or a question of federal law that has not been resolved by the United States Supreme Court.

¶ 14 Accordingly, in our discretion, we may grant an interlocutory appeal when (1) immediate review may promote a more orderly disposition or establish a final disposition of the litigation; (2) the order from which an appeal is sought involves a controlling question of law; and (3) that question of law is unresolved. *Kowalchik v. Brohl*, 2012 COA 25, ¶ 13, 277 P.3d 885, 888.

¶ 15 Here, we conclude that immediate review may well promote a more orderly disposition of the litigation. Were we not to grant immediate review, the parties could potentially arbitrate all of the claims in this case and then the Association could appeal the order compelling arbitration. Were a division of this court to conclude that the district court had erred in enforcing the arbitration provision, the parties would have needlessly expended substantial amounts of time and money. In these circumstances, we conclude that accepting this appeal now would promote a more orderly disposition of the litigation.

¶ 16 We further conclude that each of the certified questions presents an unresolved question of law. Each question involves statutory interpretation, which is a question of law. *Clyncke v. Waneka*, 157 P.3d 1072, 1076 (Colo.2007). Moreover, none of the certified questions has been addressed either by our supreme court or in a published decision of a division of this court. C.A.R. 4.2(b)(2).

¶ 17 The question thus becomes whether the district court's order involves controlling questions of law. For the following reasons, we conclude that it does.

¶ 18 Neither divisions of this court nor jurisdictions with statutes or rules that are similar to C.A.R. 4.2 have developed a single definition of "controlling" to be applied in all cases when deciding whether to entertain an interlocutory appeal certified by the district court. *Adams v. Corr. Corp. of Am.*, 264 P.3d 640, 645–46 & n. 8 (Colo.App.2011). Rather, appellate courts, including divisions of this court, have determined what constitutes a controlling question of law based on the nature and circumstances of the order being appealed. *Id.* We take the same approach here.

¶ 19 Although no published decision of a Colorado appellate court has addressed whether a motion to enforce an arbitration agreement covering all claims in a case is a controlling question of law, the majority of federal courts addressing this issue in the analogous context of interlocutory appeals under 28 U.S.C. § 1292(b) appears to have concluded that the question is controlling. (Section 1292(b) allows a district court to certify an order not otherwise appealable if the order "involves a controlling question of law as to which there is substantial ground for difference of opinion and ... an immediate appeal from the order may materially advance the ultimate termination of the litigation.")

¶ 20 For example, in *Kuehner v. Dickinson & Co.*, 84 F.3d 316, 318 (9th Cir.1996), the district court had entered an order staying the proceedings pending arbitration and then certified the order to the Ninth Circuit, concluding, among other things, that the order presented controlling questions of law. The Ninth Circuit affirmed. *Id.* at 319. In so holding, that court rejected the defendant's argument that no question of law can be controlling unless it determines who will win on the merits. *Id.* Instead, the court noted that issues collateral to the merits may be the proper subject of an interlocutory appeal and agreed with the district court that "an order may involve a controlling question of law if it could cause the needless expense and delay of litigating an entire case in a forum that has no power to decide the matter." *Id.*; *see also Vernon v. Qwest Commc'ns Int'l, Inc.*, 925 F.Supp.2d 1185, 1195 (D.Colo. 2013) (certifying an order compelling arbitration, finding, among other things, that the issue turned on a controlling question of law); *Delock v. Securitas Sec. Servs. USA, Inc.*, 883 F.Supp.2d 784, 791 (E.D.Ark.2012) (concluding that an order compelling arbitration presented a controlling question of law when, among other things, no danger existed for an advisory opinion on a question that could not yet be asked with clarity, and the question presented could head off protracted and costly litigation about where the parties' dispute belonged and how it would be resolved); *Eisenberger v. Chesapeake Appalachia, LLC*, No. 3:09–CV–1415, 2010 WL 1816646, at *3 (M.D.Pa. May 5, 2010) (unpublished memorandum) (concluding that an order compelling arbitration was a controlling question because, among other things, an incorrect disposition of the issue would constitute reversible error and, from a practical standpoint, the conduct of the litigation would be significantly different were the case before an arbitrator rather than subject to the long and costly process of civil litigation in a federal district court); *S.A. Mineracao Da Trindade–Samitri v. Utah Int'l Inc.*, 579 F.Supp. 1049, 1050–51 (S.D.N.Y.) (concluding that an order compelling arbitration presented controlling questions of law when (1) the court's decision to compel arbitration and to stay the litigation for as long as two years was a procedural determination that was certain to affect the conduct of the action, and (2) the construction of the agreements at issue was a question of law that had arisen repeatedly, with courts construing the agreements inconsistently), *aff'd*, 745 F.2d 190 (2d Cir.1984). *But cf. Ryan, Beck & Co. v. Fakih*, 275 F.Supp.2d 393, 396 (E.D.N.Y.2003) (holding that a decision referring the issue of arbitrability to the arbitrators was not controlling when the petitioner failed to show that reversal of the court's "limited ruling" would either result in dismissal, significantly affect the conduct of the case, or have precedential value for a large number of cases; reversal of the order at issue would merely have required the court to determine the

issue of arbitrability and would not have resolved or materially advanced the litigation); *Maye v. Smith Barney Inc.*, 903 F.Supp. 570, 574 (S.D.N.Y.1995) (holding that an order compelling arbitration involved no controlling question of law, and observing that allowing an interlocutory appeal would have frustrated the pro-arbitration policy of the Federal Arbitration Act and would not have materially advanced the ultimate termination of the litigation when the parties had not yet arbitrated their claims, "a process which could narrow the issues in dispute").

¶ 21 Various commentators have construed "controlling" consistently with what appears to be the majority view of the federal courts. For example, Wright, Miller & Cooper, state, "There is no doubt that a question is 'controlling' if its incorrect disposition would require reversal of a final judgment, either for further proceedings or for a dismissal that might have been ordered without the ensuing district court proceedings." 16 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice & Procedure* (Wright, Miller & Cooper) § 3930, at 496 (2012).

¶ 22 Similarly, the treatise *Federal Procedure* states:

A legal issue is "controlling," for purposes of determining the appropriateness of an interlocutory appeal, if it could materially affect the outcome of the case. In order to satisfy the "controlling question of law" requirement, the appeal must raise some question of law which governs at least a claim, if not the whole case or defense.... [T]he question need not be dispositive of the lawsuit in order to be regarded as controlling. For example, a question which has a decisive effect on the amount of recovery may be certified. Alternatively, a determination of liability, namely reserving the question of damages, may be a controlling question of law under certain circumstances. The fact that the question is procedural rather than substantive is not a bar to certification. While a reversal as to the issue presented need not automatically end the action, the decision regarding the question of law must at least constitute reversible error.... .

2 *Federal Procedure* § 3:209 (L.Ed.2013) (footnotes omitted). .

¶ 23 Applying these principles here, we conclude that the district court's June 20, 2013 order involves controlling questions of law. The order referred the entire case to arbitration. Thus, as in *Kuehner*, 84 F.3d at 319, the order could cause the needless expense and delay of litigating an entire case in a forum that had no power to decide it. Moreover, were the parties to arbitrate and were the Association to lose and then appeal the order compelling arbitration, a decision that the order was incorrect would require a reversal of a final judgment, either for further proceedings or for a dismissal that might have been ordered without the ensuing district court proceedings. 16 Wright, Miller & Cooper, at § 3930, at 496.

¶ 24 For these reasons, we grant Triple Crown's petition for interlocutory review pursuant to C.A.R. 4.2.

¶ 25 In so ruling, we are not persuaded by the dissent's position that acceptance of this petition contravenes the Uniform Arbitration Act (UAA), §§ 13–22–201 to –230, C.R.S. 2013, an argument that no party has advanced here. We respectfully disagree with our colleague for the following reasons.

¶ 26 First, section 13–22–228(1), C.R.S. 2013, provides that an appeal "may" be taken from, among other orders, an order denying a motion to compel arbitration. This provision is silent, however, regarding motions to compel arbitration, and it does not preclude the appeal of an order compelling arbitration under a different applicable statutory provision. Nor does any language in section 13–22–228(1) suggest that it was intended to be the exclusive source of appellate jurisdiction over arbitration-related interlocutory appeals.

¶ 27 *County of Hawaii v. UNIDEV, LLC*, 301 P.3d 588 (Haw.2013), is substantially on point. In that case, a county brought claims against several developers arising from an affordable housing project. *Id.* at 590–91. The trial court granted the developers' motion to compel arbitration, the county appealed that order, and the question of the propriety of the appeal ultimately reached the Hawaii Supreme Court. *Id.* at 592–95. .

¶ 28 Construing section 658A–28 of the Hawaii Revised Statutes, which is identical to Colorado's section 13–22–228(1), the Hawaii high court held that section 658A–28 did not represent an exclusive list of appealable orders and that, therefore, the order compelling arbitration could proceed under another statute affording appellate jurisdiction. *Id.* at 590. In so holding, the court noted that although section 658A–28 specifically allowed for appeals from orders denying motions to compel arbitration, it was silent as to the appealability of orders granting motions to compel arbitration. *Id.* at 599. The court went on to state that there was no indication in the statutory language that the permission to appeal certain orders pursuant to section 658A–28 precluded the appeal of an order denying a motion to compel arbitration under another potentially applicable statute. *Id.* at 600. Accordingly, the court opined that effect could be given to both statutes at issue and that section 658A–28 posed no hurdle to an appeal under the other statute. *Id.* Finally, the court observed that the UAA laid " 'no textual pretense to exclusivity in [its] application to arbitration related appeals.' " *Id.* at 601 (quoting *Gilliland v. Chronic Pain Assocs., Inc.*, 904 P.2d 73, 77–78 (Okla.1995)).

¶ 29 This reasoning is equally applicable here and shows that section 13–22–228(1) does not preclude an interlocutory appeal under section 13–4–102.1(1) and C.A.R. 4.2.

¶ 30 Second, as the dissent observes, section 13–4–102.1(1) was adopted after section 13–22–228(1) and the cases construing section 13–22–228(1) on which the dissent relies. The latter enactment, however, made no exception for appeals from orders compelling arbitration. "We presume the legislature is aware of existing case law precedent when it enacts or amends statutes." *See People v. Laeke*, 2012 CO 13, ¶ 15, 271 P.3d 1111, 1115. Had the General Assembly intended to exclude motions to compel arbitration from the interlocutory appeal statute, it could easily have done so. *See, e.g., Concerned Parents of Pueblo, Inc. v. Gilmore*, 47 P.3d 311, 316 (Colo.2002) ("If the General Assembly wished to insulate organizations that serve young people from liability, it could have easily done so.").

¶ 31 Third, the dissent's reading of section 13–22–228(1) creates an irreconcilable conflict between that provision and section 13–4–102.1(1). Our view, in contrast, harmonizes the two statutes and avoids a conflict, consistent with settled rules of statutory construction. *See People v. Sexton*, 2012 COA 26, ¶ 17, 296 P.3d 157, 161; *see also* § 2–4–206, C.R.S.2013 ("If statutes enacted at the same or different sessions of the general assembly are irreconcilable, the statute prevails which is latest in its effective date.").

¶ 32 Fourth, the dissent's view would arguably call into question the validity of the appeals of orders compelling arbitration that our supreme court has heard pursuant to C.A.R. 21. *See, e.g., Radil v. Nat'l Union Fire Ins. Co.*, 233 P.3d 688 (Colo.2010). Our supreme court, however, has never suggested that section 13–22–228(1) limited review in such cases.

¶ 33 Finally, *J.P. Meyer Trucking & Constr., Inc. v. Colorado Sch. Dists. Self Ins. Pool*, 18 P.3d 198 (Colo.2001), on which the dissent relies, supports our position here. In *J.P. Meyer*, our supreme court observed that the entry of a final judgment is ordinarily the prerequisite for an appeal but that "where specifically authorized by statute or rule, an appellate court may review interlocutory orders." *Id.* at 201. Here, for the reasons set forth above, section 13–4–102.1(1) and C.A.R. 4.2 specifically authorize appellate review of certain interlocutory orders, and the order at issue here satisfies the requirements of those provisions. Moreover, although the court in *J.P. Meyer*, 18 P.3d at 202, stated that what is now section 13–22–228(1)(a), C.R.S.2013, was limited to appeals from orders denying motions to compel arbitration, the court was interpreting the statute before it. Nothing in *J.P. Meyer* suggested the court's view that section 13–22–228(1)(a) is the exclusive source of appellate jurisdiction over arbitration-related interlocutory appeals, an issue that was not before the court. Moreover, when *J.P. Meyer* was decided, no other statutes provided a basis for interlocutory appellate jurisdiction in arbitration-related cases.

### III. Conclusion

¶ 34 For these reasons, we exercise our discretion and grant Triple Crown's petition

for interlocutory review pursuant to C.A.R. 4.2.

JUDGE WEBB concurs.

JUDGE TERRY dissents.

JUDGE TERRY dissenting.

¶ 35 Because I believe that the granting of this petition for interlocutory review under C.A.R. 4.2 is incompatible with Colorado statutory and case law, I respectfully dissent from the majority's decision.

¶ 36 Acceptance of this petition contravenes the Uniform Arbitration Act, sections 13–22–201 to –230, C.R.S.2013, which allows an interlocutory appeal from an order denying a motion to compel arbitration, *see* § 13–22–228(1)(a), C.R.S.2013, while not allowing an appeal from an order compelling arbitration, such as the order here, *see generally* § 13–22–228.

¶ 37 In *J.P. Meyer Trucking & Constr., Inc. v. Colorado Sch. Districts Self Ins. Pool,* 18 P.3d 198 (Colo.2001), the Colorado Supreme Court held that appellate jurisdiction under the Uniform Arbitration Act "is limited to the denial of a motion to compel arbitration based upon a written agreement to arbitrate or an arbitration provision in a contract." The supreme court stated that "the plain language of the [Uniform Arbitration Act] clearly provides for an appeal *only* after a motion to compel arbitration under section 13–22–204[, C.R.S.2013,] has been *denied.*" *Id.* at 201 (emphasis added). The court emphasized the mandatory nature of the legislative policy to allow appeals only of orders denying motions to compel arbitration, stating:

> [T]he specificity of the language in the UAA reveals an *intent by the legislature to limit the availability of an appeal to the circumstances detailed in the statute. Lunsford v. W. States Life Ins.,* 908 P.2d 79, 84 (Colo.1995) ("When the legislature speaks with exactitude, [courts] must construe the statute to mean that the inclusion or specification of a particular set of conditions necessarily excludes others."). Here, the precise language of *section 13–22–221 leaves no room for permitting appeals other than those specifically enumerated.*

> *The language is so specific, in fact, that courts have not even read the statute to allow for an appeal from an order compelling arbitration. Rather, courts have restricted it to allow only for appeals from an order denying a motion to compel arbitration, as the plain language requires.*

*Id.* at 202 (emphasis added).

¶ 38 In *Ferla v. Infinity Dev. Assocs., LLC,* 107 P.3d 1006, 1008 (Colo.App.2004), the appellants acknowledged that an order compelling arbitration may be reviewed after the arbitration has been completed and the trial court has confirmed or vacated the award. *See* § 13–22–221, C.R.S.2013; *Mountain Plains Constructors, Inc. v. Torrez,* 785 P.2d 928 (Colo.1990). They nevertheless argued that section 13–22–221(1)(a), C.R.S.2013, violates equal protection because it permits an interlocutory appeal of a trial court's order denying a motion to compel arbitration, but does not permit the appeal of an order granting a motion to compel arbitration. Rejecting that argument, a division of this court stated:

> Arbitration is a convenient mode of resolving disputes that is favored by the public policy of Colorado.... The existing statutory scheme, which allows for appellate review to protect the right to compel arbitration, serves a legitimate purpose because it is rationally based on the public policy favoring arbitration. If an arbitrable claim is adjudicated by the trial court, the benefits of a speedy resolution by arbitration are lost.

*Ferla,* 107 P.3d at 1009 (emphasis added) (citations omitted).

¶ 39 I recognize that the Uniform Arbitration Act and the cases cited above predate the enactment of the civil interlocutory appeal statute, section 13–4–104.5, C.R.S.2013, and C.A.R. 4.2. Thus, the interlocutory appeal statute and rule are potentially in conflict with the pre-existing provisions of the Uniform Arbitration Act.

¶ 40 Even assuming that the newer interlocutory appeal statute and rule can be viewed as allowing interlocutory appeals previously precluded by the Uniform Arbitration Act, I believe that we should nevertheless

decline to accept this appeal. The strength of our supreme court's pronouncements about the legislative intent behind the Act indicates that the policy of eliminating delay in the arbitration process is an extremely important one that should not be disregarded simply because there is a new potential avenue for interlocutory appeal.

¶ 41 The acceptance of this interlocutory appeal frustrates the considered policy judgment of the legislature described in *J.P. Meyer Trucking* and *Ferla*. Accepting an interlocutory appeal of an order compelling arbitration unnecessarily slows down the parties' access to arbitration and adds to their costs. *See City & Cnty. of Denver v. Dist. Court*, 939 P.2d 1353, 1362 (Colo.1997) (arbitration is " 'well recognized as an effective and expeditious means of resolving disputes between willing parties desirous of avoiding the expense and delay frequently attendant to the judicial process'[; thus,] '[i]t has long been the policy of the law to interfere as little as possible with the freedom of consenting parties to achieve that objective.' ") (quoting *Westinghouse Elec. Corp. v. New York City Transit Auth.*, 82 N.Y.2d 47, 603 N.Y.S.2d 404, 623 N.E.2d 531, 534 (1993) (citations omitted)); *see also Maye v. Smith Barney Inc.*, 903 F.Supp. 570, 574 (S.D.N.Y. 1995) (holding that granting interlocutory appeal under 28 U.S.C. § 1292(b) of order compelling arbitration would frustrate proarbitration policy of Federal Arbitration Act, 9 U.S.C. §§ 1–16); *Long v. DeGeer*, 753 P.2d 1327, 1328 (Okla.1987) ("courts generally look with favor upon arbitration provisions as a shortcut to substantial justice with a minimum of court interference").

¶ 42 For three reasons, I am not swayed by the policy consideration, cited by the majority, of saving the parties from the possible inconvenience and expense of going through what could turn out to be an unnecessary arbitration. First, were we to accept a C.A.R. 4.2 petition every time it might save the parties inconvenience and expense, there would be no end to the number of petitions we would be accepting. Second, appeals of orders to arbitrate are rarely filed *after* completion of the arbitration process, and such an appeal here, post-arbitration, is by no means inevitable. Thus, we may not, in the end, save the parties any inconvenience or expense by accepting this appeal. Third, application of C.A.R. 4.2 to take an interlocutory appeal has less to recommend it in the arbitration context than in the realm of other commercial litigation, given that the whole point of arbitration is to allow for the speedy resolution of disputes. Our acceptance of this petition has slowed down the path to arbitration, and that is contrary to the legislature's intent in enacting the Uniform Arbitration Act.

¶ 43 For these reasons, I believe we should not, and indeed may not, accept this interlocutory appeal.